UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN TORRES PONCE (A# 240-464-995),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-06932 TLN SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding pro se with a d this habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to a U the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1). ECF No. 3.

**FACTUAL AND PROCEDURAL HISTORY**

**I. Factual Background**

Petitioner is a citizen and national of Mexico who entered the United States without inspection on an unknown date and time. ECF No. 7-2 at 2 (Form I-213). U.S. Border Patrol agents detained Petitioner on June 23, 2026, as part of an operation targeting noncitizens with arrest warrants in their native countries. Id. The Department of Homeland Security ("DHS") administratively charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizen present without admission or parole). ECF No. 7-5 (Notice to Appear, Jul. 9, 2026).

Petitioner received a custody redetermination hearing before an immigration judge ("IJ")

on August 12, 2026. ECF No. 7-3; ECF No. 10 (audio recording). The hearing lasted just over an hour. Petitioner testified on his own behalf and answered questions from his counsel (No. 10 at 04:16 – 24:39), DHS counsel (id. at 24:40 – 48:29), and the IJ (id. at 48:30 – 54:00). The IJ asked questions regarding the nature of the outstanding Mexican warrant for arrest on fraud charges, including the potential penalties if convicted (i.e., whether the charge was serious or minor). Petitioner and his counsel said the warrant was for fraud related to disability benefits through Petitioner's former employer, which Petitioner believes was a trumped-up charge meant to intimidate him.[1] Id. Petitioner stated that it was an "administrative sanction." Id. at 56:36-44.

The IJ found Petitioner was a danger and flight risk based on the arrest warrant for fraud in Mexico. The IJ credited Petitioner's employment history, but determined Petitioner did not meet his burden of proof, noting in his written order:

> Respondent's testimony during these proceedings was evasive at best, directly undermining their credibility and preventing a clear understanding of the foreign legal matters. This complete lack of transparency leaves the court without the necessary information to evaluate the severity of the foreign charges, meaning the Respondent has failed to prove they do not pose a danger to the community.[2]

Id. at 1-2. According to the audio, the IJ was skeptical that Mexico would seek extradition for an "administrative matter," and that Petitioner did not know the specific penalties for the charge given his law enforcement background. ECF No. 10 at 56:45 – 59:14. Petitioner reserved the right to appeal the IJ's ruling but Respondent maintains that he has not done so. ECF No. 7 at 2.

## II. Procedural History

Petitioner, proceeding pro se, filed his 2241 petition on August 31, 2026. ECF No. 1. The petition challenges Petitioner's detention without bond under the Due Process Clause of the Fifth Amendment. Id. at 6 (Count Two). Petitioner expressly alleges that he is held without bond pursuant to the Board of Immigration Appeals' ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). Id. at 2-3. Petitioner requests a "prompt and meaningful custody review" or immediate release under reasonable conditions of supervision. Id. at 7. Petitioner

---

[1] Petitioner worked in Mexican law enforcement and earlier testified to corruption in his agency, which formed the basis for applications for relief. See ECF No. 10 at 04:16 – 24:39.

[2] "Respondent" in the immigration court record is Petitioner in this matter.

attached seven exhibits, id. at 9-44, which appear to be the evidence he submitted to the IJ prior to his initial custody redetermination proceeding.

Respondent filed an answer opposing the petition on grounds that Petitioner is lawfully subject to detention under 8 U.S.C. § 1226(a) and has already received a bond hearing. ECF No. 7. Respondent further argues that Petitioner has not exhausted administrative remedies through an appeal of the bond hearing to the BIA and is free to request a subsequent bond hearing under 8 C.F.R. § 1003.19(e). Id. at 2. After the matter was submitted, the undersigned requested the audio recording of Petitioner's bond hearing to ensure a complete record. ECF No. 9.

Petitioner subsequently filed an official certificate of no criminal record from the Mexican Government dated September 7, 2026. ECF Nos. 11 (Spanish) and 14 (English translation). He also filed a declaration explaining that the Mexican authorities charged him with the "misdemeanor" offense of paying a doctor to give him days off from work, which the doctor denies. He fears he will be killed if he returns to face charges. ECF No. 12 at 2. He adds that the interpreter at his bond hearing had difficulty understanding him. Id. at 3. Petitioner later filed supplemental evidence that an IJ granted his applications for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding under the Convention Against Torture ("CAT") on September 29, 2026. ECF No. 13.

## LEGAL STANDARDS

### I. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## II. Statutory Immigration Framework

The Parties agree that 8 U.S.C. § 1226(a) governs Petitioner's detention. The Supreme Court discussed § 1226(a) and the statutory authority underlying Petitioner's NTA, § 1227(a), at length in Jennings v. Rodriguez, 583 U.S. 281 (2018):

> Even once inside the United States, [noncitizens] do not have an absolute right to remain here. For example, a [noncitizen] present in the country may still be removed if he or she falls "within one or more . . . classes of deportable [noncitizens]." [8 U.S.C.] § 1227(a). That includes [noncitizens] who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).
>
> Section 1226 generally governs the process of arresting and detaining that group of [non-citizens] pending their removal . . . Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of [a non-citizen] 'pending a decision on whether the [non-citizen] is to be removed from the United States.' § 1226(a). 'Except as provided in subsection (c) of this section,' the Attorney General 'may release' [a non-citizen] detained under § 1226(a) 'on ...bond' or 'conditional parole.'

Jennings, 583 U.S. at 288.[3]

"When a person is apprehended under § 1226(a), an ICE officer makes the initial custody

---

[3] The undersigned changed "alien" to "non-citizen" in these passages. This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years. See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

determination. The [noncitizen] will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). If a noncitizen wishes to contest the Attorney General's initial custody determination—i.e., the denial or amount of bond—the noncitizen has a right to do so before an immigration judge "any time before an order [of removal] becomes final." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). After a custody redetermination hearing, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Rodriguez Diaz, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19(e)).

## DISCUSSION

The undersigned liberally construes the petition as seeking habeas relief on two separate grounds. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must "construe *pro se* habeas filings liberally"). First, Petitioner challenges the constitutionality of his ongoing § 1226(a) detention. See ECF No. 1 at 6 ("Petitioner has been detained . . . for a prolonged period with a final resolution of his immigration case."). Second, the undersigned infers from the petition and its voluminous bond hearing exhibits that Petitioner is challenging the constitutionality of the August 12, 2026, bond hearing. See id. ("Petitioner does not pose a danger to the community . . . there are no circumstances showing that continued detention is necessary to protect [the] public."). The undersigned will address claim in turn.

### I. Due Process Challenge to Petitioner's § 1226(a) Detention

The undersigned construes the petition as raising an as-applied, procedural due process to Petitioner's ongoing detention under 8 U.S.C. § 1226(a). See ECF No. 1 at ("Prolonged detention without adequate review violates due process.") Petitioner's claim that Respondent has denied him a bond hearing pursuant to the BIA's decision in Yajure Hurtado is belied by Respondent's evidence of the August 12, 2026, bond hearing. Moreover, the Ninth Circuit's decision in Rodriguez Diaz forecloses an inherent due process right to a successive bond hearing solely by virtue of petitioner's continued § 1226(a) detention. 53 F.4th at 1209-11.

The undersigned does not read Rodriguez Diaz or any other precedent as foreclosing

individualized analysis as to whether such a successive bond hearing is necessary to satisfy procedural due process. See Rodriguez Diaz, 53 F.4th at 1213 ("[W]e do not foreclose all as-applied challenges to § 1226(a)'s procedures."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (Rodriguez Diaz "held only that a noncitizen detained under section 1226(a) does not have a right to a *second* bond hearing when the only changed material condition since their first bond hearing is the duration of their detention") (emphasis in original).

Nevertheless, Petitioner has not demonstrated entitlement to relief on an as-applied basis. He entered without inspection and thus does not possess a protected liberty interest from a prior release at the government's discretion. Nor is his detention prolonged. Petitioner possesses a general liberty interest in freedom from immigration detention. See Zadvydas, 533 U.S. 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). But the Ninth Circuit has held that "existing agency procedures," i.e., the prompt receipt of a bonding hearing under § 1226(a), "sufficiently protected" that interest. Rodriguez Diaz, 53 F.4th at 1209.

Accordingly, the undersigned recommends that Petitioner's as-applied, procedural due process challenge to his § 1226(a) detention be denied. Petitioner is advised that he can request another bond hearing pursuant to 8 C.F.R. § 1003.19(e) based on the Mexican Government's September 7, 2026, certificate of no criminal, the immigration court's September 29, 2026, grant of asylum and withholding of removal, or other evidence of materially changed circumstances since the first bond hearing.[4] Section § 1003.19(e) states that, "[a]fter an initial bond redetermination, [a noncitizen's] request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the [noncitizen's] circumstances have changed materially since the prior bond redetermination."

////

## II. Constitutional Challenge to Bond Hearing

[4] Given the grant of asylum, it is not clear what lawful basis Respondent would have to continue to detain Petitioner. While DHS reserved appeal of the order granting asylum and other relief, as of November 1, 2026 the EOIR Automated Case Information platform showed no appeal pending.

**A. Legal Standards**

The undersigned also liberally construes the petition as raising a constitutional challenge to the IJ's bond denial. In constitutional challenges to an IJ's detention determination, a habeas court reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). Moreover, a habeas court reviews pure questions of law de novo. See Singh, 638 F.3d at 1202-03.

"To determine whether [a noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006), abrogated on other grounds by Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021)). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." Id.

**B. Analysis**

Before turning to the merits of Petitioner's bond hearing challenge, the undersigned will address Respondent's exhaustion arguments. "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." Hernandez, 872 F.3d at 988 (citing Singh, 638 F.3d at 1203 n.3). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). "If a petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies,'" unless exhaustion is excused. Hernandez, 872 F.3d at 988 (citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

As noted, the determination whether a noncitizen poses a risk of danger or flight "is a mixed question of law and fact and is reviewable as a 'question of law.'" Martinez, 124 F.4th at 779 (quoting Singh, 638 F.3d at 1202). In other words, while a court may review for an abuse of discretion pure legal questions or mixed questions of law and fact, it may not review "underlying factual determinations" such as "*credibility*, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." Id. at 782-83 (quoting Wilkinson v. Garland, 601 U.S. 209, 225 (2024)) (emphasis added); see also Nazari v. Mullin, No. 2:26-CV-01904-GJL, --- F. Supp. 3d ----, 2026 WL 2879665, at *4 (W.D. Wash. Sept. 18, 2026) ("[D]istrict courts may not review underlying factual determinations such as the IJ's factfinding on credibility, their weighing of the evidence, or the IJ's logic . . . in drawing inferences from the evidence.") (internal quotations and citation omitted).

Here, the IJ expressly based his finding of danger and flight on an adverse credibility finding. See ECF No. 7-3 at 1-2 (finding Petitioner's "evasive demeanor" undermined his credibility and prevented a "clear understanding" of the pending fraud charge). As a result, the undersigned cannot resolve Petitioner's bond hearing challenge without examining his credibility. As this is a factual determination outside the scope of the court's abuse of discretion review, Martinez, 124 F.4th at 782-83, the undersigned declines to do so. Instead, the undersigned finds that Petitioner should have appealed the IJ's ruling to the BIA. The third Puga favor particularly favors exhaustion given that the IJ credibility determinations are within the BIA's scope of review and could potentially preclude the need for judicial review. See 8 C.F.R. § 1003.1(d)(3)(i) (BIA review IJ credibility determinations under "clearly erroneous" standard). Accordingly, the undersigned recommends that the Petitioner's bond hearing challenge be dismissed without prejudice for failure to exhaust administrative remedies. See Hernandez, 872 F.3d at 988.

Petitioner's brief mention that the interpreter did not "understand the point I was trying to get across," ECF No. 12 at 2, gives the Court concern. See ECF No. at 12 at 2. "[F]aulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based." He v. Ashcroft, 328 F.3d 593, 598 (9th Cir. 2003); see also Perez-Lastor v. I.N.S., 208 F.3d 773, 778 (9th Cir. 2000) (unresponsive answers by the witness provide circumstantial evidence of translation problems). However, Petitioner mentions this only in passing and does not elaborate on the specific interpreter issues he encountered. Moreover, Petitioner was represented by counsel who aptly stepped in during the IJ's questioning to clarify the nature of the pending warrant. Petitioner and his counsel fiercely disagreed with the IJ's characterization of his testimony as evasive, to which the IJ replied they could raise on appeal. ECF No. 10 at 1:00:48 – 1:01:44. As explained above, the undersigned agrees that this issue is better suited for BIA review.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to appoint counsel is DENIED as moot.

In addition, IT IS HEREBY RECOMMENDED that Petitioner's application for writ of

habeas corpus (ECF No. 1) be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 2, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE